UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE KNAPP,

                Plaintiff,                                Hon. Hala Y. Jarbou

v.                                               Case No. 1:21-cv-280

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed in part and vacated and remanded in part for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019).

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *Id.* at 224-25.   Substantial evidence is more than a scintilla, but less than a preponderance, and it constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017).   The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018).   This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 36 years of age on her alleged disability onset date.   (ECF No. 10-6, PageID.496).   She successfully completed high school and worked previously as a CNC machine operator and a machine feeder.   (ECF No. 10-15, PageID.1624).

-2-

Plaintiff applied for benefits on September 19, 2014, alleging that she had been disabled since June 29, 2013, due to cervical dystonia-torticollis, degenerative disc disease, bulging disc, arthritis, depression, anxiety, attention deficit disorder, chest deformities, premature ovarian failure, cervical radiculopathy, and cervical facet syndrome. (ECF No. 10-6, 10-7, PageID.496-508, 533).

Plaintiff's applications were denied, after which she requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Christopher Mattia, in an opinion dated June 26, 2017, determined that Plaintiff did not qualify for disability benefits. (ECF No. 10-3, 10-4, PageID.284-333, 405-19). The Appeals Council affirmed the ALJ's decision after which Plaintiff initiated an action pursuant to 42 U.S.C. § 405(g), seeking judicial review. On January 27, 2020, the undersigned recommended that the Commissioner's decision be vacated and the matter remanded for further administrative action. (ECF No. 10-16, PageID.1733-44). The Honorable Janet T. Neff adopted this recommendation. (*Id.*, PageID.1732, 1745).

Following a subsequent administrative hearing, ALJ Mikel Lupisella, in an opinion dated January 27, 2021, determined that Plaintiff did not qualify for disability benefits. (ECF No. 10-15, PageID.1600-82). The Appeals Council affirmed the ALJ's decision. Plaintiff now returns to this Court again seeking judicial review.

Plaintiff's insured status expired on December 31, 2016.   (*Id.*, PageID.1603). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status.   *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).   If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.   *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.   *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.   *See* 42 U.S.C. § 423(d)(2)(A).   While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is

determined.  *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: degenerative disc disease of the cervical spine, cervical dystonia,[1] degenerative disc disease and disc protrusions of the lumbar spine, sacroiliitis, trochanteric bursitis of the right hip, degenerative joint disease of the right shoulder, migraine headaches, obesity, hypertension, major depressive disorder, mood disorder, and anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (ECF No. 10-15, PageID.1604-08).

---

[1] Cervical dystonia, also referred to as spasmodic torticollis, is "a painful condition in which your neck muscles contract involuntarily, causing your head to twist or turn to one side."  *See*  Cervical  Dystonia,  available  at https://www.mayoclinic.org/diseases-conditions/cervical-dystonia/symptoms-causes/syc-20354123 (last visited on July 12, 2022).   This disorder "can also cause your head to uncontrollably tilt forward or backward."  *Id.*  Treatment "often reduces the signs and symptoms" of this disorder, "but sustained remissions are uncommon."  *Id.*

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work[2] subject to the following limitations: (1) she can only lift ten pounds; (2) she can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds; (3) she can occasionally balance on narrow, slippery, or erratically moving surfaces; (4) she can occasionally stoop, kneel, and crouch, but cannot crawl; (5) she can occasionally reach overhead with her dominant right upper extremity; (6) she can occasionally reach in all other directions with her dominant right upper extremity; (7) she can occasionally push and/or pull with her dominant right upper extremity (including the use of hand controls); (8) she can frequently, but not constantly, handle and finger with her dominant right upper extremity; (9) she is limited to a work environment where objects do not enter from either side (such as on an assembly line); (10) she can have no exposure to vibration (such as vibratory tools or machinery); (11) she can tolerate light and noise equivalent to that of an office setting; (12) she is limited to a work environment where the noise intensity level does not exceed "moderate" as that term is defined in the Selected Characteristics of Occupations; (13) she can have no exposure to hazards such as unprotected heights or dangerous, moving machinery; (14) she cannot operate a motor vehicle as part of her work duties; (15) she is able to

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567, 416.967. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  *Id.*; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

understand, carry out, and remember simple instructions; (16) she is limited to simple and routine tasks performed in an environment free from fast-paced production requirements (i.e., no work on an assembly line); (17) she is limited to low stress work defined as involving only simple work-related decision and routine work place changes; (18) she is limited to having only occasional interaction with co-workers and supervisors; (19) she cannot perform jobs that involve transactional interaction with the public (i.e., sales, negotiation, customer service, or resolution of disputes); (20) the work itself should deal with things rather than people throughout a typical workday; and (21) there should be no tandem tasks or teamwork required. (*Id.*, PageID.1608-09).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, her limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316.   In satisfying this burden, the ALJ may rely on a vocational expert's testimony.    *Ibid*.

In this case, a vocational expert testified that there are approximately 397,000 light jobs and 199,000 sedentary jobs in the national economy that an individual with Plaintiff's RFC could perform, such limitations notwithstanding.    (*Id.*, PageID.1625).   This represents a significant number of jobs.    *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand

jobs in the United States fits comfortably within what this court and others have deemed 'significant'").    Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.    Plaintiff is Not Entitled to a Rehearing

Plaintiff argues that she is entitled to relief on constitutional grounds. Specifically, Plaintiff argues that because the Commissioner of Social Security has been unlawfully appointed, it is unlawful for him to delegate to an ALJ the task of finding facts and resolving claims for disability benefits.    Plaintiff further argues that the ALJ operated pursuant to regulations promulgated by the Commissioner in violation of the Constitution.    Plaintiff argues that these circumstances render the "structure" of the Social Security Administration "unconstitutional" and renders invalid the decision denying her claim for benefits.    In rejecting this argument, one court recently explained:

> The Court first finds that Commissioner's final decision was not constitutionally defective.    Recently, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm.    In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the. . .method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]    The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void."    *Id*. at 1787,1788 n. 23.    In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits.    The Plaintiff simply

-8-

argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view. *Id.* Therefore, the final decision of the ALJ is not constitutionally defective.

*Boger v. Kijakazi*, 2021 WL 5023141 at *3 (W.D.N.C. Oct. 28, 2021).

The Court finds this rationale persuasive and notes that many other courts have likewise rejected this argument. [3]  Plaintiff offers neither evidence nor argument that there exists a nexus between the allegedly unconstitutional removal

---

[3] *See, e.g., Jones v. Kijakazi*, 2022 WL 1016610 at *12 (D. Del. Apr. 5, 2022); *Michelle D. v. Kijakazi*, 2022 WL 972280 at *6 (N.D. Ill. Mar. 31, 2022); *Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658 at *15-18 (W.D.N.Y. Mar. 14, 2022); *Tucker v. Kijakazi*, 2022 WL 742744 at *2-3 (S.D. Fla. Mar. 11, 2022); *Burrell v. Kijakazi*, 2022 WL 742841 at *5 (E.D. Pa. Mar. 10, 2022); *Platt v. Comm'r of Soc. Sec.*, 2022 WL 621974 at *5-6 (S.D.N.Y. Mar. 3, 2022); *Juliana Jolean A. v. Kijakazi*, 2022 WL 595361 at *1-5 (N.D.N.Y. Feb. 28, 2022); *Jason V. v. Comm'r of Soc. Sec.*, 2022 WL 575703 at *5-7 (W.D. Wash. Feb. 25, 2022); *Colbert v. Comm'r of Soc. Sec.*, 2022 WL 556738 at *2 (N.D. Ohio Feb. 24, 2022); *Kathy R. v. Kijakazi*, 2022 WL 42916 at *3-5 (D. Me. Jan. 5, 2022), *adopted by* 2022 WL 558359 (D. Me. Feb. 24, 2022); *Kreibich v. Kijakazi*, 2022 WL 538261 at *6 (W.D. Wis. Feb. 23, 2022); *Taffe v. Kijakazi*, 2022 WL 542884 at *9-11 (S.D. Cal. Feb. 22, 2022); *Kowalski v. Kijakazi*, 2022 WL 526094 at *9-12 (M.D. Pa. Feb. 22, 2022); *Twila D.B. v. Kijakazi*, 2022 WL 425936, at *2-4 (C.D. Cal. Feb. 10, 2022); *Pepper v. Kijakazi*, 2022 WL 391577 at *2-3 (D.S.C. Feb. 9, 2022); *Rhonda W. v. Comm'r of Soc. Sec.*, 2022 WL 390802 at *6-8 (S.D. Ohio Feb. 9, 2022); *Vickery v. Comm'r of Soc. Sec.*, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Carla D. v. Kijakazi*, 2022 WL 264460 at *1-3 (E.D. Wash. Jan. 27, 2022); *Ramos v. Comm'r of Soc. Sec.*, 2022 WL 105108 at *2-4 (E.D. Cal. Jan. 11, 2022); *Nudelman v. Comm'r of Soc. Sec.*, 2022 WL 101213 at *10-13 (D. Ariz. Jan 11, 2022); *Mor v. Kijakazi*, 2022 WL 73510 at *3-5 (D.N.J. Jan. 7, 2022); *Hutchens v. Kijakazi*, 2021 WL 5834409 at *6-14 (M.D.N.C. Dec. 9, 2021), *adopted by* ECF No. 24 (M.D.N.C. Jan. 5, 2022); *Olimpiada v. Kijakazi*, 2022 WL 19678 at *4-5 (D. Nev. Jan. 3, 2022); *Benavidez v. Kijakazi,* 2021 WL 6062715 at *4 (D.N.M. Dec. 22, 2021); *Wybo v. Kijakazi,* 2021 WL 6052423 at *4 (W.D. Ky. Dec. 21, 2022); *Nathaniel H. v. Kijakazi*, 2021 WL 5921377 at *4-6 (D. Or. Dec. 15, 2021); *Clark v. Kijakazi*, 2021 WL 5905942 at *3-4 (E.D. Wis. Dec. 14, 2021); *Alice T. v. Kijakazi*, 2021 WL 5302141 at *18-19 (D. Neb. Nov. 15, 2021); *Robinson v. Kijakazi,* 2021 WL 4998397 at *3 (W.D.N.C. Oct. 27, 2021).

restriction and the denial of her application for benefits. Accordingly, this argument is rejected.

## II. The ALJ's Reference to Plaintiff's Continued Smoking

In his opinion, the ALJ observed that he "cannot help but discount the seriousness of [Plaintiff's] cardiovascular limitations, given her significant history of daily cigarette smoking and repeated cessation counseling from treating clinicians." (ECF No. 10-15, PageID.1616). The ALJ further observed that Plaintiff's "significant history of smoking is not consistent with that of a person who believes her disability is, even in part, due to a cardiovascular impairment." (*Id*.).

Plaintiff argues that it was "clear error" for the ALJ to discount Plaintiff's credibility on the basis of her continued smoking. Plaintiff has identified no authority for this proposition. Courts have long recognized, however, that a claimant's "refusal to stop smoking is a legitimate factor to consider in evaluating [her] credibility." *Green v. Commissioner of Social Security*, 2015 WL 3867759 at *8 (W.D. Mich., June 23, 2015); *see also*, *Marshall v. Commissioner of Social Security*, 2015 WL 777940 at *5 (E.D. Mich., Feb. 24, 2015) ("under Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating his credibility"). Accordingly, this argument is rejected.

### III.    Medical Opinion Evidence

On September 4, 2014, Dr. Neil Goodman offered his opinion regarding
Plaintiff's ability to perform physical work-related activities.    (ECF No. 10-9,
PageID.934-37).   While the doctor's opinion was, in many respects, consistent with
the ALJ's RFC assessment, Dr. Goodman also found that Plaintiff was more limited
in certain respects than the ALJ concluded.   The ALJ afforded "little weight" to
these portions of Dr. Goodman's opinion.    (ECF No. 10-15, PageID.1618-21).
Plaintiff argues that she is entitled to relief because the ALJ failed to provide
sufficient reasons for discounting the opinions of her treating physician.

The treating physician doctrine recognizes that medical professionals who
have a long history of caring for a claimant and her maladies generally possess
significant insight into her medical condition.   *See Barker v. Shalala*, 40 F.3d 789,
794 (6th Cir. 1994).   An ALJ must, therefore, give controlling weight to the opinion
of a treating source if: (1) the opinion is "well-supported by medically acceptable
clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent
with the other substantial evidence in the case record."   *Gayheart v. Commissioner
of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013).

Such deference is appropriate, however, only where the particular opinion "is
based upon sufficient medical data."   *Miller v. Secretary of Health and Human
Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991).   The ALJ may reject the
opinion of a treating physician where such is unsupported by the medical record,
merely states a conclusion, or is contradicted by substantial medical evidence.   *See*

-11-

*Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.   *Gayheart*, 710 F.3d at 376.   Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."   *Ibid.* Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.   *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.   *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.   *Ibid.* (citing 20 C.F.R. § 404.1527).   While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.   *See, e.g.,*

-12-

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ analyzed Dr. Goodman's opinion in detail, devoting more than three pages of his opinion thereto. (ECF No. 10-15, PageID.1618-21). The ALJ's RFC findings are identical to, or consistent with, much of the doctor's assessment. Nevertheless, the ALJ discounted the following portions of Dr. Goodman's assessment: (1) during an 8-hour workday, Plaintiff can only sit for 3 hours, stand for 1 hour, and walk for 1 hour; (2) Plaintiff requires a sit-stand option; and (3) "all upper torso/arm activities severely limited." (ECF No. 10-9, 10-15, PageID.934, 937, 1618).

In support of his decision to discount these aspects of Dr. Goodman's opinion, the ALJ first observed that Dr. Goodman is a primary care physician rather than an orthopedic or neurological specialist. The ALJ also observed that Dr. Goodman failed to articulate an explanation for these severe limitations, but instead merely identified certain tests Plaintiff had participated in and diagnoses she had received. More significantly, however, the ALJ concluded that Dr. Goodman's opinion was inconsistent with the then existing medical record including his own treatment notes. This conclusion is supported by substantial evidence.

The results of an MRI arthrogram of Plaintiff's right shoulder, performed on January 18, 2012, were "negative." (ECF No. 10-9, PageID.824). X-rays of Plaintiff's right shoulder, taken July 31, 2013, were "negative." (*Id.*, PageID.822). Treatment notes dated September 24, 2013, indicate that the results of cervical spine

x-rays were "unremarkable" and Plaintiff exhibited "excellent shoulder range of motion with negative impingement maneuvers."  (ECF No. 10-8, PageID.678).   An October 18, 2013 bone scan of Plaintiff's cervical spine was "normal."  (*Id.*, PageID.680).

Treatment notes dated March 20, 2014, revealed that Plaintiff exhibited "minimal laterocollis with good range of motion."  (*Id.*, PageID.713).   Plaintiff performed "fine coordinated movements" without difficulty and her gait was "normal."  (*Id.*, PageID.714).   Hoffman[4] and Romberg[5] testing were both negative.  (*Id.*, PageID.714-15).   The doctor noted that Plaintiff's symptoms "are more suggestive of fibromyalgia with marked fatigue."  (*Id.*, PageID.715).

On April 21, 2014, Plaintiff exhibited "5/5 strength throughout except internal shoulder rotation which is 4+."  (*Id.*, PageID.691).   Plaintiff exhibited "no fasciculations"[6] and the results of a sensory exam were normal.  (*Id.*).   Plaintiff

---

[4] Hoffman test indicates "whether there are compression – or pressure – problems in your spine near your neck."   What to Know About the Hoffman Test, available at https://www.webmd.com/brain/what-to-know-hoffman-test (last visited July 12, 2022).

[5] Romberg test is a "simply physical test to see if you have balance problems that are related to proprioception – your body's ability to sense your movements and position.   In particular, the test can determine if your dorsal column pathway of your brain and spinal cord, which controls proprioception, isn't working properly."  Romberg Test, available at https://my.clevelandclinic.org/health/diagnostics/22901-romberg-test (last visited July 12, 2022).

[6] Fasciculations refer to involuntary "muscle twitching."   What do Fasciculations or Muscle Twitching Mean?, available at https://www.als.org/navigating-

-14-

likewise exhibited no evidence of gait impairment.   (*Id.*).   Treatment notes dated August 27, 2014, indicate that Plaintiff "has not seen her doctor for quite some time." (ECF No. 10-9, PageID.914).   An examination revealed no evidence of fasciculations or spasm and Plaintiff was able to move her extremities without difficulty.   (*Id.*, PageID.914-15).

Treatment notes, including ones authored by Dr. Goodman, between May 2013 and September 2014, consistently indicated that, while Plaintiff had limited range of motion in her shoulder, she exhibited good grip strength, no significant neurological abnormalities, and no gait impairment.   (ECF No. 10-9, 10-10, PageID.733, 738, 740, 742, 744, 763, 956, 958, 960, 1067, 1069, 1071, 1073, 1075, 1077, 1088, 1090, 1092).

Treatment notes from Plaintiff's chiropractor, dated from June 2013 through October 2014, indicate that Plaintiff reported experiencing "intermittent" or "infrequent" neck and back pain, which on 53 of 56 instances rated between 0-4 on a 1-10 scale.   (ECF No. 10-10, PageID.991-1010).   The other three instances, Plaintiff rated her pain as 5/10.   (PageID.991, 996, 1001).

---

als/resources/what-do-fasciculations-or-muscle-twitching-mean (last visited July 12, 2022).

In sum, the ALJ's rationale for discounting Dr. Goodman's opinions is supported by substantial evidence.    While Plaintiff's condition subsequently deteriorated, as explained below, Dr. Goodman's opinion was not supported by the evidence then in existence.    Accordingly, this argument is rejected.

## IV.    Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations."    *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

As noted above, the ALJ concluded that Plaintiff could perform a very limited range of light work.    Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence.    Specifically, Plaintiff argues that her ability to (1) use her upper extremities and (2) sit, stand, and walk is more limited than the ALJ recognized.    The Court partly agrees.

As discussed above, the evidence through September 4, 2014, the date Dr. Goodman offered his opinion, substantially supports the ALJ's RFC assessment. Likewise, evidence through the date Plaintiff's insured status expired, December 31, 2016, substantially supports the ALJ's RFC finding.

-16-

X-rays of Plaintiff's cervical spine, taken on September 18, 2014, revealed a loss of cervical lordosis and "mild" foraminal stenosis at C3-4 and C4-5.    (ECF No. 10-9, PageID.939).    Treatment notes throughout 2016 and into early 2017, indicated that Plaintiff: (1) obtained relief from medication and physical therapy; (2) exhibited limited range of motion in her neck and right shoulder; (3) exhibited good grip strength; (4) exhibited no gait abnormalities; (5) exhibited normal Romberg testing; (6) reported experiencing "mild to moderate" pain; (7) exhibited normal strength; and (8) exhibited no evidence of significant neurologic abnormality.    (ECF No. 10-11, 10-12, 10-13, PageID.1241-68, 1323, 1358-62, 1373, 1375, 1379, 1385).    Treatment notes dated June 1, 2016, indicate that Plaintiff obtained relief by participating in physical therapy.    (ECF No. 10-11, PageID.1241-42).    Also, on December 18, 2016, Plaintiff reported that she "had gone over 6 months without an acute pain event." (ECF No. 10-12, PageID.1325).

Beginning in mid-to-late 2017, however, the medical evidence reflects a marked deterioration in Plaintiff's condition.    Treatment notes dated July 24, 2017, indicated that Plaintiff exhibited a "jerky tremor" when rotating her head.    (ECF No. 10-21, PageID.1977).    Plaintiff also exhibited a "transient tremor" in her right hand.    (*Id*.).    Treatment notes dated October 30, 2017, indicate that Plaintiff "has a hard time walking and her right leg is everted."[7]    (*Id.*, PageID.1979).    Plaintiff also exhibited a left head tilt with elevation of her left shoulder.    (*Id.*, PageID.1979).

---

[7] Foot eversion is when the "foot collapses inward" causing the sole of the everted foot to "face[] away from [the] other foot, increasingly so as the problem worsens."

Treatment notes dated February 6, 2018, indicated that Plaintiff exhibited "left head tilt and left shoulder elevation." (*Id.*, PageID.1982). When turning her head, Plaintiff exhibited "an irregular jerky tremor." (*Id.*). Plaintiff was also observed to walk with a slow, antalgic gait. (*Id.*). Treatment notes dated February 23, 2018, indicate that injection therapy to treat Plaintiff's back pain was "ineffective." (*Id.*, PageID.2001). Treatment notes dated March 14, 2018, indicate that Plaintiff was experiencing tenderness, pain, and reduced range of motion in her lumbar spine. (*Id.*, PaegID.1995).

Treatment notes dated May 17, 2018, indicate that Plaintiff was continuing to exhibit "left head tilt and left shoulder elevation." (*Id.*, PageID.1983). Plaintiff exhibited a right-hand tremor and was observed to ambulate "with a slow gait, with [her] right foot externally rotated and dragging." (*Id.*). Physical therapy treatment notes, dated June 1, 2018, through July 27, 2018, reveal that Plaintiff was experiencing decreased tolerance for standing or walking, general weakness, and balance deficits. (*Id.*, PageID.2019-84).

Treatment notes dated August 16, 2018, reveal that Plaintiff was utilizing a cane and walking with an antalgic gait. (ECF No. 10-22, PageID.2144). An examination of Plaintiff's lumbar spine revealed that she was experiencing spondylosis. (*Id.*, PageID.2145). Treatment notes dated September 24, 2018,

---

Foot Eversion Signs, Causes, and Treatment, available at https://www.greatmidwestfootandankle.com/foot-eversion-treatment-wi/ (last visited July 12, 2022).

indicate that Plaintiff was experiencing pain and muscle rigidity in her neck and reduced range of motion in her lumbar spine.  (*Id.*, PageID.2135).  Plaintiff's gait was described as "irregular" with a "limp."  (*Id.*).

Treatment notes dated December 10, 2018, indicate that Plaintiff exhibited "left head tilt and left shoulder elevation."  (*Id.*, PageID.2200).  Plaintiff also exhibited a tremor with neck movement and her gait was described as antalgic.  (*Id.*).  Examinations conducted in March, June, and September 2019, revealed similar observations.  (*Id.*, PageID.2201-05).

In conclusion, substantial evidence supports the ALJ's RFC finding through mid-2017, well after the expiration of Plaintiff's insured status.  Thus, the ALJ's decision denying Plaintiff's claim for Disability Insurance Benefits is supported by substantial evidence.  Beginning in mid-to-late 2017, however, Plaintiff's condition began to deteriorate such that the ALJ's RFC for the period applicable to Plaintiff's claim for Supplemental Security Income (SSI) benefits is not supported by substantial evidence.  The ALJ denied Plaintiff's SSI claim based on the vocational expert's testimony that there existed a significant number of jobs which Plaintiff could perform consistent with her RFC.  But, because the vocational expert's testimony was premised upon a faulty RFC assessment, the ALJ's reliance thereon does not constitute substantial evidence.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the

claimant's impairments).   Thus, the ALJ's decision denying Plaintiff's claim for SSI benefits is not supported by substantial evidence.

## V.   Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013).   This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking."   *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.   Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. This is especially apt given the complex nature of Plaintiff's impairments and symptoms.   While it is clear that Plaintiff's ability to perform sustained work activities is severely limited, the Court simply lacks the competence to conclude that there exists overwhelming and uncontradicted evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

-20-

## **CONCLUSION**

For the reasons stated herein, the undersigned concludes that substantial evidence supports the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits.   The undersigned further concludes, however, that substantial evidence does not support the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income benefits.   Accordingly, the undersigned recommends that the Commissioner's decision be affirmed in part and vacated and remanded in part for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 13, 2022                    /s/ Phillip J. Green
                                       PHILLIP J. GREEN
                                       United States Magistrate Judge